UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESTATE OF KEITH GEORGE CHURCH,

    Plaintiff,

vs.

Case No. 04-CV-75069
HON. GEORGE CARAM STEEH

JACQUELINE TUBBS,

    Defendant.

_____/

ORDER MODIFYING DECEMBER 6, 2005 ORDER (#12)
ON SUBMISSION OF SUPPLEMENTAL BRIEFS IN SUPPORT
OF SUMMARY JUDGMENT, GRANTING SUMMARY JUDGMENT, IN PART,
IN FAVOR OF PLAINTIFF ESTATE, AND GRANTING SUMMARY JUDGMENT,
IN PART, TO DEFENDANT TUBBS

    This matter is before the court following supplemental briefing following defendant Jacqueline Tubbs' motion for summary judgment. For the reasons set forth below, summary judgment is hereby GRANTED, IN PART, in favor of plaintiff Estate of Keith George Church as to: (1) Estate's claim for return of a $7,274.40 engagement ring or payment of its value; and (2) Estate's claim for partition of a Michigan home as to liability ONLY. Summary judgment is hereby GRANTED, IN PART, in favor of defendant Tubbs, to the extent Church seeks recovery of $4,100.00 as a debt-loan ONLY. This matter will proceed to a bench trial with respect to an appropriate partition of the Michigan home and Estate's remaining claims for recovery of $4,100.00 as a conditional gift and a return of decedent Church's personal property including a $4,560.00 family heirloom diamond ring.

**I. Background**

    The underlying circumstances of this lawsuit are set forth in a December 6, 2005 Order denying defendant Jacqueline Tubbs' motion for summary judgment. Plaintiff Estate

alleges its decedent Keith George Church, a citizen of the United Kingdom, and defendant Tubbs, a citizen of Michigan, developed an Internet relationship, with Church later visiting Tubbs in Michigan.  Church and Tubbs allegedly became engaged in February 2000, and agreed to be married in July 2000.  Estate alleges Church paid off Tubbs' $4,100.00 credit card debts in return for Tubbs' promise to repay the loan with money she expected to receive in a workers' compensation settlement.  Estate also alleges Church gave Tubbs a $7,274.40 engagement ring and deposited $194,852.56 into a bank account for the purpose of purchasing a marital home in Michigan.  Following Church's instructions, Tubbs purchased a Michigan home on April 7, 2000 using the bank account proceeds, titling the real property in both their names as unmarried joint tenants.  Church allegedly delivered personal belongings to the Michigan home, including a $4,560.00 family-heirloom diamond ring.

Tubbs allegedly informed Church by e-mail on June 5, 2000, without explanation, that their relationship was over.  Two days later, on June 7, 2000, Church executed a will in England.  Tubbs thereafter allegedly refused to repay the $4,100.00 credit card loan, to return the engagement ring, to return Church's personal property, or to convey her interest in the Michigan home to Church.  Church died on July 24, 2000.  His Estate filed suit in federal court on December 29, 2004 pursuant to the court's diversity jurisdiction seeking recovery of the alleged $4,100.00 loan, return of the engagement ring, return of Church's personal property, and full ownership of the Michigan home under theories of breach of an implied in law contract of marriage, unjust enrichment, and conditional gifts vesting only upon marriage.

Tubbs moved for summary judgment on September 23, 2005 raising just two arguments: (1) lack of federal diversity jurisdiction because the parties are each citizens of Michigan in that Church's ancillary estate is being probated in Michigan's Sanilac County

2

Probate Court; and (2) Church released Tubbs from all liability under Church's June 7, 2000 Will.  Both parties proffered the May 19, 2005 deposition testimony of Tubbs.  The court rejected Tubbs' jurisdictional argument because Estate is deemed by law to be a citizen of decedent Church's State, the United Kingdom.  See 28 U.S.C. § 1332(c)(2).  As to Tubbs' defense under Church's Will, the court found pursuant to Lepard v. NBD Bank, 384 F.3d 232 (6th Cir. 2004) that, at minimum, the court lacks subject matter jurisdiction to construe the intent of Church's Will under the probate exception to diversity jurisdiction, further adding:

> The parties have not had an opportunity to brief the probate exception to federal diversity jurisdiction raised by the court.  The dispositive motion cut-off date has since expired, and trial is scheduled for February 13, 2006.  Tubbs has not addressed those cases cited in Estate's complaint for the proposition that an engagement ring is deemed a conditional gift that fails when the engagement is terminated.  See Meyer v. Mitnick, 244 Mich. App. 697, 625 N.W.2d 136 (2001).  Neither have the parties addressed Michigan law limiting recovery on an agreement reached between an unmarried couple to theories of express or implied in fact contracts; Michigan courts "will not allow recovery based on contracts implied in law or quantum meruit because to do so would essentially resurrect common-law marriage." Featherston v. Steinhoff, 226 Mich. App. 584, 575 N.W.2d 6 (1998).  The parties have not addressed a Michigan probate court's authority to partition real property.  See M.C.L. §§ 600.3301, 600.3304, 700.1303(1)(b); Beaton v. LaFord, 79 Mich. App. 373, 261 N.W.2d 327 (1978).  Given the unresolved legal issues, including the jurisdictional issue raised under the probate exception to federal diversity jurisdiction, the court is convinced that, in lieu of an order to show cause why this matter should not be dismissed for lack of federal jurisdiction, a status conference is needed to clarify these issues and the parties' positions before proceeding to the scheduled bench trial.

December 6, 2005 Order, at 4-5.

At a scheduled January 4, 2006 status conference, Estate proffered a supplemental brief addressing the issues raised by the court in the December 6, 2005 Order.  Tubbs was granted leave to file a supplemental responsive brief, which Tubbs filed on January 24, 2006.  Estate filed a supplemental reply brief on January 27, 2006.

## II.  Standard of Review

As set forth in the court's prior December 6, 2005 Order, Federal Rule of Civil Procedure 12(b)(1) authorizes the court to dismiss an action for lack of federal subject matter jurisdiction. "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004). Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). Although Tubbs is the only party that has filed a formal motion for summary judgment, a federal district court may grant summary judgment in favor of a non-moving party where, as here, there is no genuine issue of material fact. E.E.O.C. v. Allendale Nursing Centre, 996 F.Supp.2d 712, 713 (W.D.Mich. 1998).

## II. Analysis

### A. Probate Exception to Diversity Jurisdiction

On January 19, 2006, the Sixth Circuit issued Evans v. Pearson Enterprises, Inc., 434 F.3d 839 (6th Cir. 2006), holding under the probate exception that federal diversity jurisdiction "does not extend to claims requiring (1) interference with probate proceedings, (2) assumption of general jurisdiction over probate, or (3) assumption of control over property in the custody of a state court." Id. at 847 (citing Markham v. Allen, 326 U.S. 490, 494 (1946)). Only the second category applies here[1], that is, whether adjudication of

---

[1] The parties do not argue, and the record does not indicate, that this court's exercise of jurisdiction would interfere with an ongoing probate proceeding or would require

4

Estate's claim would require this court to assume general jurisdiction over a probate matter. The Sixth Circuit instructs that, to answer this question, a federal district court must determine "whether under state law the dispute would be cognizable only by the probate court." Evans, 434 F.3d at 848.

The jurisdiction enjoyed by Michigan probate courts is defined entirely by statute. See In re Wirsing, 456 Mich. 467, 472, 573 N.W.2d 51 (1998). With respect to the settlement of a decedent's estate, Michigan probate courts enjoy exclusive jurisdiction over:

(I) The internal affairs of the estate.

(ii) Estate administration, settlement, and distribution.

(iii) Declaration of rights that involve an estate, devisee, heir, or fiduciary.

(iv) Construction of a will.

(v) Determination of heirs.

(vi) Determination of death of an accident or disaster victim under [M.C.L. § 700.1208].

M.C.L. § 700.1302(a). In contrast, Michigan probate courts enjoy concurrent jurisdiction with other Michigan courts to *inter alia* determine a property right or interest, to authorize a partition of real property, to impose a constructive trust, to hear and decide a claim by an estate fiduciary for the return of property, and to hear and decide a contract action by an estate. M.C.L. § 700.1303(1)(a), (b), (g-I). Contrary to Tubbs' argument, M.C.L. § 700.3710 authorizing a personal representative to "maintain an action to recover possession of, or to determine the title to, property," and M.C.L. § 700.3704, permitting but not requiring a personal representative to "invoke the [probate] court's jurisdiction to resolve a question concerning the estate or its administration," do not implicate a probate court's exercise of exclusive jurisdiction.

---

the court to assume control over property in the custody of another court.

On their face, none of Estate's claims require this court to exercise jurisdiction over the settlement of Estate's probate affairs as described in M.C.L. § 700.1302(a). Instead, Estate's claims require this court to determine property rights and interests as between Estate and Tubbs, a possible partition of the Michigan home as between Estate and Tubbs, the possible invocation of a constructive trust over the Michigan home; a possible return of real and personal property to ancillary Estate administrator and fiduciary Tami Salens, and a decision with respect to Estate's contract claims alleged against Tubbs. These claims do not fall within the exclusive jurisdiction of a Michigan probate court. M.C.L. § 700.1303(1)(a), (b), (g-I).

However, adjudication of Estate's claim for the repayment of a $4,100.00 "loan" allegedly made to Tubbs requires construction of Church's June 7, 2000 Will and its clause: "I release any debts owing to me at the date of my death together with the interest owing to me." Estate's claim to the extent it seeks repayment of a $4,100.00 loan is the only claim arguably released under the Will as a "debt." See Burke v. Burke, 217 Mich. 195, 197, 185 N.W.2d 823 (1921) (distinguishing a monetary debt from a gift by the express or implied promise to repay the money). Estate's claims seeking a return of the same $1,400.00 payment as a conditional gift as opposed to repayment of a loan, return of the engagement ring, the return of Church's personal property, and a award of full ownership in the Michigan home do not involve allegations that Tubbs promised to repay Church for the $1,400.00 gift, engagement ring, the Michigan home, or Church's personal property.

Whether Estate's decedent released Tubbs from repaying a $4,100.00 loan debt by operation of the June 7, 2000 Will requires construction of the Will. Indeed, Estate has advanced the argument that the Will is inapplicable because its debt-release clause applies only to one Sue Carrick. See October 12, 2005 Affidavit of English Solicitor Linda Mary Box, ¶¶ 7-8. Tubbs argues that the Will released the debt, yet testified at her deposition

that the money was a gift, denying that she agreed to repay Church with proceeds she would receive in a workers' compensation settlement. Tubbs Tr. at 22-23. Estate's claim for repayment of the alleged $4,100.00 as a debt requires construction of the Will, a task reserved to the exclusive jurisdiction of a Michigan probate court. M.C.L. § 700.1302(a). Accordingly, Estate's claim for repayment of the alleged $4,100.00 as a loan, as opposed to a gift, will be dismissed without prejudice under the probate exception to diversity jurisdiction because the dispute is cognizable only by a Michigan probate court. Evans, 434 F.3d at 848; DLX, Inc., 381 F.3d at 516.

### B. Conditional Gift
### Implied In Law Contract, Quantum Meruit

As a federal district court exercising diversity jurisdiction in Michigan, this court must construe Michigan law in the absence of Michigan Supreme Court precedent by reviewing the decisions of Michigan appellate courts, other federal courts construing Michigan law, restatements of law, law review commentaries, and/or the decisions from other jurisdictions as to the "majority" rule. See Meridian Mutual Ins. Co. v. Kellman, 197 F.3d 1178, 1181 (6th Cir. 1999). This court must predict how the Michigan Supreme Court would rule if faced with the issue. Id.

#### Engagement Ring

The Michigan Court of Appeals has expressly ruled that an engagement ring is a conditional gift, and if the engagement is called off for any reason, the ring is incapable of becoming a completed gift and must be returned to the donor. Meyer v. Mitnick, 244 Mich. App. 697, 703-704 (2001). Tubbs does not dispute that she received an engagement ring from Church on February 16, 2000, and that its price was $7,274.42. Tubbs Tr. at 29-31. Tubbs also testified that she no longer has the ring because she threw it into the Elk Creek River. Tubbs Tr. at 32. Tubbs' unsupported argument that Church intended to marry her

to acquire a green card, even if true, is irrelevant with respect to the conditional gift nature of the ring.  Based on Tubbs' own testimony, Estate is entitled to recover the engagement ring or its $7,274.42 value from Tubbs as a matter of Michigan law.  Meyer, 244 Mich. App. at 703-704; Redding, 241 F.3d at 532; E.E.O.C., 996 F.Supp.2d at 713.

### Michigan Home

Estate cites Meyer and decisions from Pennsylvania, New Jersey, and South Dakota for the legal proposition that, like an engagement ring, a gift of real property made in contemplation of marriage is likewise a conditional gift that must be returned to the donor if the engagement is called off.  The Michigan Court of Appeals decision in Meyer is limited to engagement rings which, "by their very nature [are] conditional gifts given in contemplation of marriage." Meyer, 244 Mich. App. at 702.  Michigan courts have generally limited recovery on an agreement reached between an unmarried couple to theories of express contract or implied in fact contract, reasoning that to allow recovery based on contracts implied in law or quantum meruit would essentially resurrect common-law marriage in Michigan.  See Featherston v. Steinhoff, 226 Mich. App. 584, 588, 575 N.W.2d 6 (1998).  Yet, with respect to an engagement ring, it is "the inherent symbolism of this gift" that permits the conditional nature of the gift to "be implied in fact or imposed by law in order to prevent unjust enrichment." Meyer, 244 Mich. App. at 701-702 (quoting Brown v. Thomas, 127 Wis.2d 318, 326-327, 379 N.W.2d 868 (Wis.App. 1985)).

As advanced by Estate, other state jurisdictions have applied the principle of a conditional gift in contemplation of marriage to real property.  See Nicholson v. Johnston, 2004 PA Super 279, 855 A.2d 97 (Sup.Ct.Pa. July 19, 2004) (awarding entire down payment to joint tenant who had made payment in contemplation of marriage and had made all mortgage, tax, insurance and sewer payments); Fanning v. Iverson, 535 N.W.2d 770 (Sup.Ct.S.D. Aug. 9 1995) (awarding entire real estate to tenant in common who had

8

made entire down payment in contemplation of marriage and had paid all taxes, insurance, and maintenance costs); Aronow v. Silver, 223 N.J.Super 344, 538 A.2d 851 (Sup.Ct. Nov. 17 1987) (awarding entire condominium interest to tenant in common who had made entire down payment in contemplation of marriage and had lived by himself there before and after the engagement was broken).  No Michigan court has apparently ruled on the precise issue of whether the principle of a conditional gift in contemplation applies to real estate.

The Michigan Court of Appeals instructs that, just because a couple is unmarried, that does not preclude them from entering enforceable agreements.  Tyranski v. Piggins, 44 Mich. App. 570, 573, 205 N.W.2d 595 (1973).  As explained in Featherston:

> Michigan does not recognize common-law marriages arising after January 1, 1957. M.C.L. § 551.2; M.S.A. § 25.2. Those engaged in meretricious relationships do not enjoy property rights afforded a legally married couple. Carnes v. Sheldon, 109 Mich.App. 204, 211, 311 N.W.2d 747 (1981). This Court will, however, enforce an agreement made during the relationship upon proof of additional independent consideration. Id.; Tyranski v. Piggins, 44 Mich.App. 570, 573-574, 205 N.W.2d 595 (1973). The agreement must be either express or implied in fact.

Featherston, 226 Mich. App. at 588.  Such is the case with engagement rings, where the gift vesting condition of marriage may be "implied in fact or imposed by law" by the very nature and symbolism of the ring itself.  Meyer, 244 Mich. App. at 701-702.  Proof that a gifted ring was in fact an engagement ring is enough to show that the couple reached an enforceable agreement that the ring would be returned to the donor if the engagement ended without marriage.  Id.

Consistent with Meyer, Tyranski, and Featherston, as well as the out-of state cases cited by Estate, this court finds that, if faced with the issue, the Michigan Supreme Court would hold that a gift of real property made in contemplation of marriage to the anticipated donee spouse may be enforced as a conditional gift that must be returned to the donor upon proof of an express or implied in fact contract.  Carnes, relied upon by Tubbs as

disfavoring for the proposition that Michigan disfavors granting mutually enforceable property interests to knowingly unmarried couples under principles of an *implied in law* contract, is consistent with this court's holding. See Featherston, 226 Mich. App. at 588. Unlike an engagement ring which, by its very nature and symbolism creates an implied in fact condition of marriage before the gift vests, a gift of real property during an engagement period does not share the same symbolism, and does not alone raise a presumption of a conditional gift in contemplation of marriage. Rather, as in Nicholson, Fanning, and Aronow, supra, the donor must come forward with factual evidence beyond proof that the real property was gifted during the engagement period to prove an implied in fact condition that the gift of real property was to vest only upon marriage i.e. proof that the donor paid the entire price for the property in contemplation of marriage. Jones v. Green, 126 Mich. App. 412, 337 N.W.2d 85 (1983), cited by Tubbs as holding that property conveyed to joint tenants with rights of survivorship may not be partitioned as a matter of law, is inapplicable as the Warranty Deed proffered by the parties shows that the Michigan home was conveyed to "Keith G. Church, a single man and Jacqulyn J. Tubbs as single woman as joint tenants," with no express rights of survivorship. Estate's Exhibit 12 attached to Complaint. See Albro v. Allen, 434 Mich. 271, 275, 454 N.W.2d 85 (1990) (recognizing that "rights of survivorship" are created by express words in the granting instrument). "All persons holding lands as joint tenants or as tenants in common may have those lands partitioned." M.C.L. § 600.3304.

Tubbs admitted during her deposition testimony that Church paid the entire $194,852.56 purchase price for the Michigan home. Tubbs Tr. at 43. Tubbs also testified that, before purchasing the house, she and Church discussed that "when we got married, you know, that this was our house and I was going to keep it." Tubbs Tr. at 44. Clearly, Estate has presented sufficient facts to support a finding that Church's purchase of the

Michigan home for Tubbs as a joint tenant was a gift of real property made in contemplation of marriage which is enforceable as an express or implied contract. The issue that remains, however, is a proper partition of the Michigan property in that Tubbs has resided in the home since April 2000, and presumably made ceratin tax, insurance, and upkeep payments while residing in the home. An appropriate partition of the home cannot be accomplished based on the record now before the court. Consistent with the analysis herein, Estate is entitled to have the Michigan property partitioned as a matter of law. Redding, 241 F.3d at 532; E.E.O.C., 996 F.Supp.2d at 713.

### $4,100.00 Credit Card Payment

As previously determined, the court lacks federal subject matter jurisdiction to decide whether the alleged $4,100.00 debt was released under Church's will. Tubbs has testified that the $4,100.00 was a gift from Church. Whether the $4,100.00 was a gift in contemplation of marriage that Tubbs must return pursuant to an express or implied in fact condition that the gift would vest only upon marriage remains subject to further factual development at trial. Redding, 241 F.3d at 532; E.E.O.C., 996 F.Supp.2d at 713.

### C. Church's Personal Property

Estate has alleged that Tubbs has wrongfully refused to return Church's personal property stored within the Michigan home, including a $4,560.00 Church family-heirloom diamond ring. Tubbs testified that she threw "rings" into the Elk River, but it is unclear from her testimony whether the ring in addition to the engagement ring was the alleged Church family-heirloom. See Tubbs Tr. at 64. Tubbs has generally denied failing to return Church's personal property. Whether Tubbs is liable for the return of Church's personal property awaits factual development at trial. Redding, 241 F.3d at 532; E.E.O.C., 996 F.Supp.2d at 713.

### III. Conclusion

11

Summary judgment is hereby GRANTED, IN PART, in favor of plaintiff Estate of Keith George Church as to: (1) Estate's claim for return of a $7,274.40 engagement ring or payment of its value; and (2) Estate's claim for partition of a Michigan home as to liability ONLY. Judgment will enter in favor of Estate accordingly, and these issues will not be further addressed at trial. Summary judgment is hereby GRANTED, IN PART, in favor of defendant Tubbs, to the extent Church seeks recovery of $4,100.00 as a debt-loan ONLY. Estate's claim for repayment of a $4,100.00 debt is hereby DISMISSED without prejudice for lack of subject matter jurisdiction. This matter will proceed to a bench trial with respect to the remaining issue of an appropriate partition of the Michigan home, and Estate's remaining claims for recovery of $4,100.00 as a conditional gift and a return of decedent Church's personal property including a $4,560.00 family heirloom diamond ring. A bench trial schedule will enter under separate order.

SO ORDERED.

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated: March 7, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on March 7, 2006, by electronic and/or ordinary mail.

s/Josephine Chaffee
Secretary/Deputy Clerk

12